**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **Theresa Parker,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:25-cv-00734-ADA-SH** |
| **Travis County, Texas and Sally** | § | |
| **Hernandez,** *in her official capacity as the* | § | |
| *Travis County Sheriff,* | § | |
| *Defendants* | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Travis County and Sheriff Sally Hernandez's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), filed September 25, 2025 (Dkt. 27); Plaintiff Theresa Parker's Response, filed October 8, 2025 (Dkt. 29); and Defendants' Reply, filed October 15, 2025 (Dkt. 32).[1]

## I.     Background

Theresa Parker brings this employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*, against Travis County, Texas and Sheriff Sally Hernandez.

### A.  Plaintiff's Allegations

In her First Amended Complaint (Dkt. 23), Parker alleges that she worked as a 911 Senior Telecommunications Specialist for the Travis County Sheriff's Office ("TCSO") from November

---

[1] The District Court referred to this Magistrate Judge all non-dispositive pretrial matters for disposition and all case-dispositive motions for findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and Judge Alan D Albright's Standing Order on referrals to United States Magistrate Judges. Dkt. 8.

2006 until she was terminated in December 2023. Dkt. 23 ¶ 18. Her direct supervisor, Alesha McElroy, began to sexually harass her in March 2022 by commenting on Parker's physical appearance and breast size and by touching and caressing Parker's hair and hips. *Id.* ¶¶ 28-33. McElroy's conduct made Parker feel uncomfortable and she construed McElroy's conduct as unwanted sexual advances. *Id.* ¶¶ 28-30.

Parker reported McElroy's sexual harassment to her second line supervisor Amanda Porter on July 8, 2022, telling her that "Plaintiff perceived the sexually suggestive gestures as a form of hostility by means of sexual harassment and Plaintiff was concerned Ms. McElroy's advances were part of a quid pro quo harassment that could lead to negative impact on her employment." *Id.* ¶ 35. Porter "immediately ended the discussion and informed Plaintiff that she complained too much, and that she (Ms. Porter) didn't have time to investigate or respond." *Id.* ¶ 36.

Parker then emailed human resources complaining about McElroy's sexual harassment and Parker's fear of retaliation by Porter, but the human resources employee "dropped the discussion and simply referred Plaintiff back to Ms. Porter and to Internal Affairs." *Id.* ¶¶ 37-38. Parker met with Porter on July 12, 2022. Porter again discouraged Parker "from exercising her rights by insisting that she stop complaining" and "directed Plaintiff to follow several specific steps before reporting future complaints that were not the normal Policy, and concluded with a threat that if Plaintiff failed to follow such steps as specifically directed, her complaints would be ignored, and no investigation would be conducted." *Id.* ¶ 40.

After her meeting with Porter, McElroy followed Porter into the workplace bathroom and "aggressively grabbed Plaintiff by her wrist" to prevent her from leaving, "pulled Plaintiff toward her while she glanced down Plaintiff's body until she paused at Plaintiff's groin area," and "commented on Plaintiff's weight loss, physique, and thigh gap." *Id.* ¶ 43. Parker reported the

incident to her new direct supervisor, Ashley Banner, and emailed HR, but "nothing was done." *Id.* ¶ 44. Parker began to experience increased hostility and retaliation after complaining about the sexual harassment. *Id.* ¶ 49.

On December 15, 2022, Plaintiff filed internal complaints against McElroy, Banner, and Porter, alleging that the negative performance evaluation they completed was the result of "harassment and intimidation" and that she "was the subject of retaliation." Dkt. 23 ¶¶ 62-63. Parker met with a supervisor about the complaint and was informed that she needed to ask to amend her internal affairs complaint. *Id.* ¶¶ 65-69. The performance evaluation and discipline log were revised to omit entries inconsistent with procedure, but there was no finding of retaliation and her internal affairs complaint was closed. *Id.* ¶¶ 71, 75.

Parker met with Sheriff Hernandez on April 3, 2023 about her discrimination complaints. Hernandez "berated Plaintiff for complaining about Ms. McElroy's actions, and victim shamed Plaintiff relentlessly as a complainer and troublemaker." *Id.* ¶¶ 83-84. Parker appealed to the Travis County's Civil Service Commission, which dismissed her appeal. *Id.* ¶ 87.

Parker filed another grievance. In October 2023, she was accused of multiple violations of the TCSO's Rules of Conduct and Internal Affairs began an investigation against her. *Id.* ¶¶ 101, 106, 111. Parker was then placed on paid leave and terminated in December 2023. *Id.* ¶¶ 115, 122. She appealed her termination, which was upheld by Sheriff Hernandez and the Civil Service Commission. *Id.* ¶¶ 123, 128-30.

**B. Litigation**

After exhausting her administrative remedies, Parker filed this employment discrimination suit against TCSO and Hernandez. Original Complaint, Dkt. 1. Defendants moved to dismiss TCSO

because it is a non-jural entity not amenable to suit. Dkt. 11. The District Court granted Parker leave to file an amended complaint and dismissed the motion to dismiss as moot.

Parker's Amended Complaint asserts Title VII claims of sexual harassment, hostile work environment and intimidation, and retaliation Dkt. 23 ¶¶ 179-220.[2] She seeks monetary damages, attorney's fees and costs, and injunctive relief.  *Id.* Defendants move to dismiss all claims.

## II.    Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not need detailed factual allegations, but it requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. The court reviews "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.    Analysis

Defendants argue that Parker's Title VII claims against Hernandez should be dismissed under Rule 12(b)(1) and Rule 12(b)(6) because she is not a proper defendant. They contend that Parker's

---

[2] Parker mentions the Rehabilitation Act of 1973 in the heading of her retaliation claim in Count Three but does not assert a claim under that statute. Dkt. 23 at 40.

4

claims against the County should be dismissed for failure to state a plausible claim for relief under Rule 12(b)(6).

## C. Sheriff Hernandez

Under Title VII, it is unlawful for a covered employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, an employer "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). A person "includes one or more individuals, governments, governmental agencies, political subdivisions . . . trustees, trustees in cases under Title 11, or receivers." *Id.*

Defendants argue that Hernandez is not a proper defendant in this Title VII suit because (1) she is not an "employer" under Title VII and is merely an employee of the County, and (2) "any claims against Sheriff Hernandez in her official capacity would be impermissibly duplicative" of the claims against the County. Dkt. 27 ¶ 32. They argue that Hernandez should be dismissed as an inappropriate party under Rule 12(b)(1) for lack of subject matter jurisdiction and for failing to state a plausible claim for relief under Rule 12(b)(6). *Id.* ¶ 34.

### 1. No Jurisdictional Issue

First, Defendants are mistaken that this case should be dismissed for lack of subject matter jurisdiction because Sheriff Hernandez is not a proper defendant. Title VII of the Civil Rights Act "provides for private causes of action arising out of employment discrimination and gives federal courts subject matter jurisdiction to resolve such disputes." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018). Thus, this Court has subject matter jurisdiction over this suit. Whether

Hernandez qualifies as an employer under Title VII and so is a proper defendant is a statutory limitation, not a jurisdictional limitation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (holding that employee-numerosity requirement for establishing Title VII defendant's "employer" status is an element of plaintiff's claim for relief, rather than jurisdictional requirement); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (stating that a dismissal for lack of statutory standing is properly granted under Rule 12(b)(6), not Rule 12(b)(1)).

### 2.  Sheriff Hernandez Can Qualify as an Employer under Title VII

In considering whether a sheriff was an employer for purposes of a Title VII action, "courts can look to state law to understand the nature of the employment relationship." *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465 (5th Cir. 2001). In *Oden*, the Court held that a Mississippi sheriff could serve, in her official capacity, as an employer for Title VII purposes. *Id.* Courts in Texas have held the same. *United States v. Matagorda Cnty.*, Texas, 181 F. Supp. 2d 673, 679 (S.D. Tex. 2002). But a sheriff cannot be held individually liable under Title VII. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). Because Parker sues Hernandez only in her official capacity, she can be held liable as a Title VII employer. *Voigt v. Cnty. of Victoria*, No. V-07-101, 2008 WL 2474575, at *3 (S.D. Tex. June 13, 2008) (dismissing Title VII claims against sheriff in his individual capacity).

Defendants argue that, although Sheriff Hernandez can be an employer for Title VII purposes, she is not a joint employer with the County and suit cannot be brought against an employer and its agent. Dkt. 32 ¶ 6. An entity may be liable under Title VII as a joint employer. *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999). To determine whether joint employer liability applies, courts apply the "hybrid economic realities/common law control test." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015). The most important

component of the test is the right to control an employee's conduct. *Muhammad v. Dall. Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). To evaluate level of control, courts look to the entity that maintains "the right to hire and fire, the right to supervise, and the right to set the employee's work schedule." *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 929 (5th Cir. 2021). The "economic realities" component focuses on who paid the employee's salary, provided benefits, withheld taxes, and set the terms of employment. *Id.*

If an employment relationship is established, courts apply the "single employer test" to determine whether joint-employer liability applies. *Hernandez v. Ho'olaulima Gov't Sols., LLC*, No. EP-23-CV-439-KC, 2024 WL 3648280, at *5 (W.D. Tex. Aug. 2, 2024). Courts consider "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Skidmore*, 188 F.3d at 616-17 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). The second factor is the most important. *Trevino*, 701 F.2d at 404. But a defendant need not have complete authority over an employee to have an employment relationship. *Hernandez*, 2024 WL 3648280, at *5 (citing *Burton*, 798 F.3d at 227-28).

Parker alleges that Hernandez issued employment policies governing the TSCO, had ultimate decision-making power to hire and fire its employees, and was responsible for day-to-day supervision. Dkt. 23 ¶¶ 6, 25, 28. She also alleges that Hernandez upheld her termination, making the termination final. *Id.* ¶ 123. Because Parker has alleged facts showing that Hernandez had the right to control her work and was responsible for her termination, she has plausibly alleged that she was Parker's employer. *Hernandez*, 2024 WL 3648280, at *4-5 (finding that plaintiff alleged an employer relationship based on control over employment, hiring, and firing).

7

Parker alleges the following facts suggesting that the operations of the County and Sheriff Hernandez were interrelated:

- Hernandez promulgated policies on behalf of the County, Dkt. 23 ¶¶ 23-25;

- Parker complained harassment to Sheriff's Deputies and then to the County per official policy, *id.* ¶¶ 37, 154;

- She appealed her termination to Civil Service Commission, a county entity, which was involved in the final decision to terminate her, *id.* ¶¶ 86-87; and

- She was paid by the County, *id.* ¶ 20.

These allegations are sufficient to allege that the County is Parker's employer. *See Hernandez*, 2024 WL 3648280, at *4-5 (finding that an employment relationship was sufficiently alleged based on control over harassment complaints and firing, despite no allegations of the paying entity). Accordingly, this Magistrate Judge finds that Parker sufficiently pleads a joint employment relationship with Sheriff Hernandez and the County.

### 3. Claims Are Duplicative

A suit against an individual in their official capacity "in all respects other than name, to be treated as a suit against the entity." *Hernandez v. Bandera Cnty.*, No. SA-10-CV-949-XR, 2011 WL 345830, at *1 (W.D. Tex. Jan. 31, 2011) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). A plaintiff can recover damages only against the entity, not the individual. *Id.* A suit against a sheriff in their official capacity is effectively a suit against the County. *Brooks v. George Cnty.*, 84 F.3d 157, 165 (5th Cir. 1996).

A plaintiff cannot sue both an employer and an employee in his official capacity because it would subject the employer to double liability. *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 746 (W.D. Tex. 2015) (citing *Indest*, 164 F.3d at 262). Because Travis County is named as a defendant, any claims against the individual defendants in their official capacities would be duplicative. *Id.* (dismissing claims against officials in official capacity because the county was already a party).

### D.  Claims Against the County

Under Title VII, it is unlawful for a covered employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Parker asserts violations of Title VII based on (1) sexual harassment, (2) hostile work environment and intimidation, and (3) retaliation. Defendants argue that Parker's claims should be dismissed because her pleadings include only conclusory allegations. Dkt. 27 ¶ 15. To state a claim under Title VII, an employment discrimination complaint need not establish a prima facie case of discrimination but must plead sufficient facts on all the ultimate elements of a discrimination claim to make the case plausible. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

### 1.  Sexual Harassment Claim

Defendants argue that Parker's sexual harassment claim fails because she does not allege "that the conduct was motivated by sex, not simply rude, mean, or unprofessional behavior." Dkt. 27 ¶ 16. Defendants also argue that Parker does not show that she was replaced by someone of the opposite sex or that Defendants treated men more favorably. *Id.* ¶ 21.

Defendants misconstrue Parker's allegations. "Sexual harassment is a form of discriminatory treatment, and applies in any situation where there is discrimination 'because of' sex, whether it be between members of the same or opposite sexes." *Cherry v. Shaw Coastal, Inc.,* 668 F.3d 182, 188 (5th Cir. 2012) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998)). In deciding a same-sex sexual harassment claim, courts in this Circuit first determine whether the alleged harasser's conduct actually was sex discrimination. *Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783, 798 (W.D. Tex. 2022), *aff'd*, 81 F.4th 419 (5th Cir. 2023). Second, they analyze whether the conduct meets the standard for a *quid pro quo* or hostile work environment. *Id.*

A plaintiff in a same-sex sexual harassment case may establish discrimination because of sex by showing: (1) the alleged harasser made explicit or implicit proposals of sexual activity and providing credible evidence that the harasser was homosexual; (2) the harasser was motivated by general hostility to the presence of members of the same sex in the workplace; or (3) direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). Because this case is at the motion to dismiss stage, Parker need only allege these facts. *Oncale*, 523 U.S. at 81; *La Day*, 302 F.3d at 478.

Unwelcome sexual harassment is sufficiently alleged "as sexual advances, requests for sexual favors, and other physical or verbal conduct of a sexual nature that is unsolicited or unincited and is undesirable or offensive to the employee." *Hanna v. Cangshan Cutlery Co.*, 767 F. Supp. 3d 384, 389 (W.D. Tex. 2025). Parker alleges that McElroy sexually harassed by, among other things, commenting on her outfits, weight loss, breast size, and thigh gap, Dkt. 23 ¶¶ 32, 43; caressing her hip without consent and stroking and caressing her hair, *id.* ¶ 31; and grabbing her by the wrist and pulling her closer while looking down her body, *id.* ¶ 43. Parker alleges that McElroy's comments and unwanted touching were sexually suggestive, that she tried to pull away when McElroy made advances, and that she made it clear that the advances were unwanted. *Id.* ¶¶ 31, 35. These allegations are sufficient to allege sexual discrimination because of same-sex sexual harassment. *Hanna*, 767 F. Supp. 3d at 390.

Quid pro quo sexual harassment requires five elements: (1) the employee belongs to a protected group; (2) the employee is subjected to unwelcome harassment; (3) the harassment is based on sex; (4) the employee's refusal of the unwelcome harassment causes a tangible job detriment; and (5) there is some ground to hold the employer liable. *Id.* at 391. "A tangible employment action

constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *La Day*, 302 F.3d at 481-82 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). A plaintiff must show a "causal nexus" between the acceptance or rejection of the sexual advances and the tangible employment action. *Lopez v. Ajuua's Mexican Rest., Inc.*, No. MO:18-CV-00187-DC, 2019 WL 13254203, at \*2 (W.D. Tex. Aug. 18, 2019) (quoting *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009)). Allegations of employment termination in retaliation for complaints of allegedly discriminatory treatment are sufficient to allege adverse employment action. *Gonzales v. Advanced Micro Devices, Inc.*, No. A-05-CA-077-LY, 2005 WL 8252512, at \*4 (W.D. Tex. Apr. 29, 2005).

Defendants argue that Parker does not "allege there was any economic privilege or benefit tied to the statements made by her supervisor," only that she was concerned that rejecting the advances could lead to a negative impact. Dkt. 27 ¶¶ 26-27. The Court disagrees. Parker alleges that supervisors threatened her to stop making complaints of harassment, changed her work environment, limited her duties, added to her with workload, and denied her requests for a transfer. Dkt. 23 ¶¶ 88, 181-86. She alleges that Porter's emails regarding her complaint suggested that Parker was losing her job, *id.* ¶ 101; negative entries were added to her performance log retroactively, eventually leading to her termination, *id.* ¶ 193; and that she was terminated for making complaints about McElroy's harassment, *id.* ¶ 186. The Court finds that Parker has sufficiently alleged that refusing the advances caused adverse employment action. *See Gonzales*, 2005 WL 8252512, at \*4 (finding that allegations of retaliatory termination, in addition to disciplinary action and negative comments, were sufficient to allege adverse employment action).

### 2. Hostile Work Environment

To state a hostile work environment claim under Title VII, a plaintiff must show that (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action. *Badgerow v. REJ Prop., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020). Defendants argue that Plaintiff's hostile work environment claim fails because "Plaintiff has not provided any evidence . . . that the actions complained of were objectively offensive, severe, or pervasive enough to create a hostile work environment." Dkt. 27 ¶ 24.

Sexual harassment is actionable under Title VII only if the harassing conduct is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188–89 (5th Cir. 2012). Evaluating whether harassment is sufficiently severe or pervasive to trigger Title VII requires an analysis of "all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance." *Id.* (quoting *La Day*, 302 F.3d at 482). Alleging deliberate and unwanted touching and sexual comments is sufficient to plead severe sexual harassment. *Rico v. Fam. Emergency Rooms, LLC*, No. 1:21-CV-0587-LY, 2021 WL 8362168, at *4 (W.D. Tex. Oct. 13, 2021), *R. & R. adopted*, 2022 WL 1485725 (W.D. Tex. Feb. 15, 2022). Sexual comments without unwanted touching also have been sufficient to state a claim. *See Galloway v. Matagorda Cnty.*, 35 F. Supp. 2d 952, 956 (S.D. Tex. 1999) (finding that allegations of inappropriate sexual comments were sufficient at the pleading stage); *Matthews v. High Island Indep. Sch. Dist.*, 991 F. Supp. 840, 844 (S.D. Tex. 1998) (same).

The Court finds that Parker's allegations of unwanted physical contact and sexual comments are sufficient to plead severe or pervasive harassment. *Rico*, 2021 WL 8362168, at *4.

### 3. Retaliation

To state a retaliation claim, a plaintiff must allege that (1) she engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Mullenix v. Univ. of Tex. at Austin*, No. 1:19-CV-1203-LY, 2021 WL 2172835, at *2 (W.D. Tex. Mar. 30, 2021) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)).

Defendants dispute only the third element, and the Court finds that Parker pleads facts sufficient to satisfy the first two. First, internal complaints are protected activity. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021).Parker alleges that she engaged in protected activity when she filed internal complaints between July 2022 and November 2023 and when she filed complaints with the EEOC alleging sexual harassment, hostile work environment, sex discrimination, and retaliation. Dkt. 23 ¶¶ 199-210. Second, plaintiffs must allege adverse employment action "with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). Parker alleges that she was terminated, an adverse employment action.

For the third element, close timing between an employee's protected activity and an adverse action against her may provide an inference of "causal connection" required to state a retaliation case. *Wright*, 990 F.3d at 434. Courts consider the passage of time between the employer becoming aware of the protected activity and the adverse employment action. *Id.* at 433-34 A day between a complaint and suspension, followed by termination within the month, has been found close enough to permit an inference of causation. *Id.* at 434. When a large time gap exists between protected

activity and adverse action, however, timing alone does not permit a plausible inference of a causal connection. *See, e.g.*, *Raggs*, 278 F.3d 463, 472 (holding that a five-month period between protected activity and adverse action was insufficient); *Mullenix*, 2021 WL 2172835, at *3 (finding that a 20-month gap was insufficient to plausibly infer a causal connection based on timing alone).

A plaintiff also may allege a causal connection by relying on a "chronology of events from which retaliation may plausibly be inferred." *Mullenix*, 2021 WL 2172835, at *3 (citation nomitted). A list of retaliatory acts is insufficient; the plaintiff must allege dates and other connective facts to bridge the gap between the protected activity and adverse action. *Id.* The chronology should show when harassment began and that it continued periodically until the adverse action occurred. *Benfield v. Magee*, 945 F.3d 333, 338 (5th Cir. 2019).

Parker's allegations support a chronology from which retaliation can plausibly be inferred. She alleges that she began to experience negative treatment shortly after she filed her first complaint. Dkt. 23 ¶ 53. She alleges that Defendants began to treat her differently than her coworkers, *id.* ¶¶ 52, 80, 82, 91; retroactively entered negative disciplinary comments, *id.* ¶ 82; and threatened her to stop complaining. *Id.* ¶¶ 37, 40, 84. She also alleges that after her initial complaint, her performance reviews declined despite a record of excellent performance, *id.* ¶¶ 52, 102, 172, and she was investigated despite having received positive reviews regarding her work, *id.* ¶¶ 103, 113.

Parker's allegations provide dates and specific examples of retaliatory actions after her internal complaint continuing until she was placed on leave and terminated. *Id.* ¶¶ 9-115. She also alleges that supervisors were motivated to protect her harasser, who was their close friend. *Id.* ¶ 42. The Court finds that retaliation can plausibly be inferred from the chronology in Parker's pleadings. *Balderas v. Southside Indep. Sch. Dist.*, No. 5-16-CV-00239-OLG-RBF, 2018 WL 912287, at *9 (W.D. Tex. Feb. 14, 2018).

14

## IV.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant Travis County and Sherrif Sally Hernandez's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 27). The Court recommends that the District Court **GRANT** the Motion to **DISMISS** all claims against Sheriff Hernandez as duplicative and **DENY** the Motion to Dismiss Parker's claims against Travis County.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 29, 2026.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE